651 N.E.2d 680 (1995)
272 Ill. App.3d 1017
209 Ill.Dec. 502
In re the ESTATE OF Moses MERRITT, Jr., a disabled adult (The Department of Mental Health and Developmental Disabilities, Plaintiff-Appellee,
v.
Karen Carlos et al., as Guardians of Moses Merritt, Jr., a Disabled Adult, Defendants-Appellants).
No. 1-93-4195.
Appellate Court of Illinois, First District, Fourth Division.
June 1, 1995.
*681 Mark J. Heyrman, Edwin F. Mandel, Legal Aid Clinic, Chicago, for appellants.
Roland W. Burris, Atty. Gen. State of Ill., Rosalyn B. Kaplan, Sol. Gen., Chicago (Daniel N. Malato, Asst. Atty. Gen., of counsel), for appellee.
Justice THEIS delivered the opinion of the court:
This appeal arises from a circuit court order requiring the estate of Moses Merritt, Jr., a disabled adult, to reimburse the Illinois Department of Mental Health and Developmental Disabilities (the "Department") for $4,919.62 in costs incurred in caring for and treating Merritt. The issues on appeal are (1) whether the court properly ordered Merritt's guardians to use social security benefits to reimburse the Department, and (2) whether social security benefits which are exempt from attachment under section 207(a) of the Social Security Act ("Act") (42 U.S.C.A. § 407(a) (1991)) lose their exemption when commingled in a bank account with nonexempt funds. We conclude that the circuit court may not order the guardians to reimburse the Department using social security benefits. We also determine that any portion of the $4,919.62 that may be reasonably traced to social security benefits must be returned to the estate. Therefore, this action is reversed and remanded. On remand, the guardians have the burden of showing that the $4,919.62 may be reasonably traced to social security benefits.
Moses Merritt resides at Elgin State Mental Health Center ("Elgin"), a hospital administered by the Department. Karen Carlos and Cassandra Laseter, Merritt's sisters, were appointed as guardians of his estate. The record on appeal shows that between 1990 and 1993 Merritt's estate made monthly payments to the Department. The Department initiated the present action against the estate seeking further reimbursement for the cost of Merritt's stay at Elgin.
The circuit court entered a judgment against the estate on April 27, 1993, ordering them to reimburse the Department for $20,271.42 for the costs of care and treatment of Merritt at Elgin. On May 17, 1993, the guardians voluntarily paid the Department $15,351.80. However, they refused to pay the balance of $4,919.62 arguing that those funds were social security benefits which were exempt from being attached under section 207(a) of the Act. (42 U.S.C.A. § 407(a) (1991).) The Department argued that the funds could be reached because they were either the proceeds of an insurance policy or an inheritance, which Merritt received after his father's death in 1988.
In ruling on the issue of whether the estate owed the Department the balance of $4,919.62, the circuit court stated that it assumed that the funds in the bank account were social security disability benefits. The court never made a specific finding as to the source of these contested funds. Further, the court rejected the plaintiff's argument that the funds could not be reached pursuant to section 407, commenting that social security funds are used regularly to reimburse State facilities and nursing homes. On November 16,1993, the court ordered the estate to pay the Department $4,919.62.
The guardians filed their final accounting which showed that they had paid the $4,919.62. On November 23, 1993, the court issued an order approving the accounting, discharging the guardians and closing the estate. The guardians now appeal arguing that this action should be reversed and remanded because the court failed to determine the source of the $4,919.62 and violated section 207 of the Act by ordering the disbursement of social security benefits to the Department.
Section 207(a) of the Social Security Act provides:
"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or *682 payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." 42 U.S.C.A. § 407(a) (1991).
The United States Supreme Court has consistently rejected attempts to read an implied exception into section 407. (See Bennett v. Arkansas (1988), 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455; Philpott v. Essex County Welfare Board (1973), 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608.) "[Section 407] imposes a broad bar against the use of any legal process to reach all social security benefits" (Philpott, 409 U.S. at 417, 93 S.Ct. at 592, 34 L.Ed.2d at 612), and "unambiguously rules out any attempt to attach Social Security benefits." Bennett v. Arkansas, 485 U.S. at 397, 108 S.Ct. at 1205, 99 L.Ed.2d at 458.
In Bennett, the United States Supreme Court found that the State of Arkansas could not attempt to attach social security benefits paid to prisoners in order to help defray the cost of maintaining the prison. The Court reached this conclusion despite the fact that the State provided for all of the prisoners needs. The Court further noted that the State cannot be said to be a "beneficiary" of an individual's social security benefits and, therefore, is not entitled to receive them. Bennett v. Arkansas, 485 U.S. at 398, 108 S.Ct. at 1206, 99 L.Ed.2d at 459.
The broad bar of section 407 operates to prevent State judicial attempts to compel representative payees to turn over social security funds to the State. (Kriegbaum v. Katz (2d Cir.1990), 909 F.2d 70; Woodall v. Bartolino (D.N.J.1985), 700 F.Supp. 210.) We conclude, therefore, that the circuit court did not have the power to order Merritt's guardians to reimburse the Department with funds derived from social security benefits.
The Department maintains that Merritt's social security benefits, the proceeds of an insurance policy and an inheritance were commingled in the same bank account. It argues that when exempt and nonexempt funds are commingled, the general exemption provided by section 407 is lost. The Department contends that it would be too difficult to determine what portion of funds constituted social security benefits. It further suggests that the defendants should have maintained a separate account for social security funds. The only authority cited by the Department is Bernardini v. Central National Bank of Richmond (1982), 223 Va. 519, 290 S.E.2d 863.
We reject the Department's argument for two reasons. First, we find that the Department is asking us to read an implied exception into section 407, an approach that has been consistently rejected by the United States Supreme Court. (See Bennett, 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455; Philpott, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608.) Second, we are not bound by Bernardini and do not find its reasoning compelling. Rather, we are persuaded by cases which hold that social security benefits which are commingled with other funds retain their exemption provided that they are reasonably traceable. See NCNB Financial Services, Inc. v. Shumate (W.D.Va.1993), 829 F.Supp. 178; Hatfield v. Cristopher (Mo. App.1992), 841 S.W.2d 761; Dean v. Fred's Towing (1990), 245 Mont. 366, 801 P.2d 579; General Motors Acceptance Corp. v. Deskins (1984), 16 Ohio App.3d 132, 16 OBR 140, 474 N.E.2d 1207.
Also, although the Illinois courts have not addressed the effect of commingling social security benefits with other nonexempt funds, a case involving veteran's benefits is analogous. In Internal Medicine Associates of Decatur, S.C. v. Patterson (1993), 244 Ill. App.3d 704, 184 Ill.Dec. 231, 613 N.E.2d 1, the appellate court held that funds traceable to veteran's benefits and reimbursement for foster parenting services were exempt from garnishment despite commingling with nonexempt funds. The court specifically rejected the notion that commingling transmuted the exempt funds into garnishable assets. Further, the court remanded the action because the trial court failed to determine the source of the funds in the account in question. As such, we hold that social security benefits that are reasonably traceable retain their exemption even if they are commingled with other nonexempt funds in the same bank account.
Alternatively, the Department argues that Merritt necessarily exhausted all but *683 $2,065.12 of his social security benefits because the Federal regulations require representative payees to use social security money to pay the State for current maintenance of the institutionalized individual. The Department contends that between 1990 and 1993, Merritt deposited $28,437.60 in social security benefits into an account containing insurance proceeds and inheritance money. It further contends that during that same time frame Merritt paid the Department approximately $600 per month for his care and treatment, and spent $529 on clothing. The Department reasons that, therefore, of the $28,437.60 which Merritt received in social security benefits, he spent at least $26,372 for his current care and maintenance as required by the regulations, leaving only $2,065.12 in funds derived from social security.
We find that the Department's argument is flawed. First, nothing in the regulations requires representative payees to reimburse the State for the cost of caring for an institutionalized individual. Rather, the regulations are broadly phrased, thereby affording a representative payee wide discretion to use funds in the best interests of the beneficiary, not the State. (See 20 C.F.R. § 404.2035 (1993).) It is true that the regulations consider payments to a State institution proper usage of social security benefits. (20 C.F.R. § 404.2040 (1993).) However, the language of the regulations is permissive, not mandatory. The spending methods advocated by the regulations do not purport to be all-inclusive.
Additionally, the regulations specifically provide that a representative payee may be held liable for the misuse of funds. (Woodall, 700 F.Supp. at 218; 20 C.F.R. §§ 404.2041, 404.2050 (1993).) Federal law provides a remedy when a payee abuses his or her fiduciary duty. (See 42 U.S.C.A. § 408 (1991).) It is the Federal government's responsibility to enforce the duties of a representative payee. (Woodall, 700 F.Supp. at 218; C.G.A. v. State (Alaska 1992), 824 P.2d 1364.) As such, we reject the Department's argument that we must conclude that the guardians exhausted all but $2,065.12 of Merritt's social security benefits.
This action is reversed and remanded for proceedings consistent with this opinion. On remand, the court must make a finding as to the source of the $4,919.62 in dispute. Once the Department shows that the bank account contained commingled funds, the burden shifts to the defendants to prove the affirmative defense that the source of the remaining funds constitutes exempt social security benefits. (See generally Wasserman v. Autohaus on Edens, Inc. (1990), 202 Ill. App.3d 229, 147 Ill.Dec. 571, 559 N.E.2d 911 (defendant has the burden of proving an affirmative defense); Peter Fischer Import Motors, Inc. v. Buckley (1984), 121 Ill.App.3d 906, 77 Ill.Dec. 290, 460 N.E.2d 346 (garnishee has the burden of proving any affirmative defense); Liberty Leasing Co., Inc. v. Crown Ice Machine Leasing Co., Inc. (1974), 19 Ill.App.3d 27, 311 N.E.2d 250.) Any portion of the $4,919.62 which is reasonably traceable to Merritt's social security benefits must be returned to the estate.
A final point raised by the guardians concerns whether 405 ILCS 5/5-105 conflicts with Federal law. We find that this issue was not raised in the court below, and is not relevant to the disposition of the present action.
Reversed and remanded.
HOFFMAN, P.J., and CAHILL, J., concur.